IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA R.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civ. No 3:20-cv-00373-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Joshua R. seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for disability and supplemental security income (SSI). Full consent to Magistrate jurisdiction was entered on March 17, 2020 (#6). For the reasons below, the Commissioner's decision is AFFIRMED.

## BACKGROUND[2]

Plaintiff, born in 1998, alleges disability due to Asperger's disorder/autism, attention deficit hyperactivity disorder (ADHD), a learning disorder, obsessive-compulsive disorder (OCD), and anxiety. Tr. 17, 185.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties, and any relations, in this case.

[2] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 12.

On September 22, 2016, Plaintiff an application for Supplemental Security Income, alleging disability beginning May 1, 2001. The agency denied the claims both initially and upon reconsideration, and Plaintiff requested a hearing. He appeared for a hearing before ALJ John Michaelsen on January 18, 2019. On February 11, 2019, the ALJ issued a decision finding Plaintiff not disabled. Plaintiff requested review of the hearing decision, which the Appeals Council denied in January 2020. Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff seeks review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20

C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.

1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since September 22, 2016 the application date.

2. Plaintiff has the following severe impairments: Asperger's disorder/autism, attention deficit hyperactivity disorder ("ADHD"), a learning disorder, obsessive-compulsive disorder (OCD), and anxiety.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

4. Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: except he would be limited to simple, repetitive, routine task[s] with no more than occasional contact with the public.

5. Plaintiff has no past relevant work.

6. Plaintiff was born on September 16, 1998, and was 18 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. Plaintiff has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue because Plaintiff does not have any past relevant work.

9. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

Consequently, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act from September 22, 2016 through the date of the decision. Tr. 27.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's

decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff presents the following issues:

1. Did the ALJ properly evaluate the medical evidence?
2. Did the ALJ err by failing to discuss the nonmedical source statements of Kara Tison, a special education teacher?

The Court finds that the ALJ properly evaluated the medical opinions, and he did not commit harmful err by failing to discuss Ms. Tison's statements. The ALJ's decision is affirmed.

### I. The ALJ properly evaluated the medical evidence.

The ALJ is responsible for resolving conflicts in the medical record. 20 C.F.R. § 404.1527; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

#### a. The ALJ did not err by determining that Dr. Tongue's assessment of Plaintiff was consistent with the limitations in the RFC.

Dr. Christopher K. Tongue, Ph.D., conducted a psychological evaluation of Plaintiff in November, 2016, while Plaintiff was still in high school. Tr. 467. Intellectual testing showed Plaintiff had overall average intellect and average attention span, though he had low functioning

in working memory and processing speed. Tr. 471-72. While he had a flat affect, and an "air" of disinterest, Dr. Tongue noted he made his best effort on tasks. Tr. 470. Plaintiff's grandmother completed the Adaptive Behavior Assessment System II – Adult Form, (ABAS-II), resulting in extremely low scores in social functioning. Tr. 469. His grandmother also completed the Asperger Syndrome Diagnostic Scale (ASDS), and based on symptoms his grandmother endorsed, Dr. Tongue opined that Plaintiff met the criteria for autism spectrum disorder. Tr. 470, 472. However, Dr. Tongue did not hear any self-reported symptoms suggesting posttraumatic stress syndrome (PTSD), which was previously reported. Tr. 472. Dr. Tongue recommended case management, a transition program following high school, and support services in the community for Plaintiff to become capable of independently living and working. Tr. 473.

Citing Dr. Tongue's testing results, the ALJ concluded that Plaintiff has some intellectual and social deficits, but not so severe as to preclude all work activity. Tr. 22. ALJ found this was consistent with a residual functional capacity limited to simple, repetitive and routine tasks. Tr. 22. The ALJ must only explain why "significant probative evidence has been rejected." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984). Because the ALJ concluded that Dr. Tongue's opinion was consistent with his decision, it did not need to be discussed and rejected.

Plaintiff argues the ALJ erred by not discussing Dr. Tongue's opinion that Plaintiff showed deficits in his nonverbal behavior, requiring substantial support. Tr. 472. However, this was a reference to Dr. Tongue's recommendation for support following completion of high school, not a medical opinion about Plaintiff's current work limitations. *See* Tr. 72, 86 (both Dr. Nicoloff and Dr. Ju note Dr. Tongue's opinion does not provide any functional limitations). An ALJ does not err by excluding recommendations from the residual functional capacity finding.

*Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009); *see also Griffith v. Colvin*, 2014 WL 1303102, *5 n. 3 (D. Or. Mar. 20, 2014) (statements that do not "show how a claimant's symptoms translate into specific functional deficits which preclude work activity," such as suggestions about what the claimant "may," "might," or "should" do are "not ... work-related limitations of function that need to be reflected in the RFC") (citations and internal quotations and brackets omitted.).

Dr. Tongue's references to Plaintiff's need for support were listed as recommendations that would help him live independently and work once he finished high school. Tr. 472 ("it is likely Joshua will require case management and a transition program following high school in terms of developing independent living skills"), 473 ("I believe he will require case management and other support services in the community if he is to obtain a capacity for independent living and work experiences."). Moreover, the "residual functional capacity is the most [a claimant] can still do despite [his] limitations," not the conditions under which he would function best. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ was not required to incorporate Dr. Tongue's recommendations, nor his suggestions for maximizing Plaintiff's success, into the RFC.

Plaintiff cites to a recent Social Security Appeals decision in this District by Judge You, in which she considered the term "substantial support" and found that it indicated evidence consistent with a finding of disability. *Brandon A. v. Berryhill*, Case No. 1:18-cv-01390-YY, (D. Or. Aug. 6, 2019). However, the context of that finding was quite different than the context here, namely that, while the ALJ determined the plaintiff's mental impairments had improved, the record reflected that the plaintiff's mental impairments had actually worsened over time, culminating in a long-time treating physician making additional diagnoses of a "hoarding disorder and autism spectrum disorder, requiring substantial support." *Id.* at *20. This was

merely one of many indications that the plaintiffs' impairments had worsened over time. The phrase "requiring substantial support," on its own, did not indicate disability.

Ultimately, Plaintiff argues for a different interpretation of the evidence and a different interpretation of Plaintiff's limitations. However, the court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Here, Plaintiff's interpretation of the evidence is reasonable, but so is the ALJ's interpretation. Substantial evidence supports the ALJ's assessment regarding Plaintiff limitations and the decision should be upheld.

### b. The ALJ did not err by finding that Dr. Deshmukh's medical opinion was not as persuasive as other medical evidence and evidence in the record.

Dr. Sunita M. Deshmukh, M.D., established care with Plaintiff on February 13, 2018, and she is his primary care physician. Dr. Desmukh prepared a letter discussing her treatment and opinion of Plaintiff for disability purposes on January 10, 2019. Tr. 663. The ALJ discounted Dr. Deshmukh's opinion because it was not supported by her own treatment notes. Tr. 24. The ALJ may discount a medical opinion when it is inconsistent with the medical provider's own treatment notes. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, Dr. Deshmukh assessed a marked limitation in Plaintiff's ability to interact with others based on her three encounters with him. Tr. 663. However, her treatment notes describe Plaintiff as alert, with good eye contact, and a "very pleasant gentleman," who appears comfortable and is able to answer questions appropriately. Tr. 557. Dr. Deshmukh further opined that Plaintiff could not sustain his attention on a simple work-related task for more than 20 minutes without needing gentle redirection and guidance. Tr. 663. However, nothing in her treatment notes indicates how she arrived at this conclusion. Tr. 552-562. By the third visit, Plaintiff's grandmother noted improvement and a "significant difference in mood/behavior"

since adjusting his Adderall to a lower dose. Tr. 558. Notably, the treatment notes from this last visit contain no observations or impressions about his ability to focus. The ALJ reasonably discounted Dr. Deshmukh's opinion as unsupported by her treatment notes.

The ALJ also reasonably discounted Dr. Deshmukh's opinion that Plaintiff has a diagnosis that equals the listing for PTSD (Listing 12.15) (Tr. 663) because it was inconsistent with Dr. Tongue's examination findings and Plaintiff's statements. Tr. 24. A medical opinion's consistency with the rest of the record is a proper consideration when evaluating the weight to give the opinion. 20 C.F.R. § 416.927(c)(4). An ALJ may also discount a medical opinion when the doctor concludes the claimant is more limited than the claimant alleges. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Here, Dr. Deshmukh opined that Plaintiff met the listing for PTSD and his PTSD symptoms contribute to extreme impairment in his ability to concentrate, persist and maintain pace. Tr. 663. However, this conclusion was based only on a reported "history" of PTSD. Tr. 663. By contrast, Dr. Tongue's examination findings indicated he had no symptoms of PTSD, despite a similar reported history. Tr. 467, 472. Dr. Deshmukh's opinion was also inconsistent with Plaintiff's own statements denying any symptoms of anxiety. Tr. 468, 560. The ALJ reasonably discounted Dr. Deshmukh's opinion as inconsistent with other evidence in the record.

As above, Plaintiff argues for a different interpretation of the evidence. Because substantial evidence supports the ALJ's assessment regarding Plaintiff limitations, the decision is affirmed.

**II.    The ALJ's failure to discuss the statement of Kara Tison was harmless.**

It is well-established that an ALJ must consider testimony from lay witnesses submitted on behalf of a claimant. 20 C.F.R. §§ 416.929(c)(3), 416.945(a)(3). The Commissioner's

regulations do not require any explicit discussion of lay witness testimony in the ALJ's decision. *See* SSR 06-03p (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision"). However, within the Ninth Circuit, lay witness testimony cannot be disregarded without comment. *Molina v. Astrue*, 674 F.3d 1110, 1114 (9th Cir. 2012) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). "Other source" opinion evidence may be discounted by an ALJ if the ALJ "gives reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). If the ALJ gives germane reasons for rejecting testimony by one witness, "the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. Similarly, where the ALJ gives clear and convincing reasons for rejecting the claimant's subjective complaints, and the lay witness evidence is similar to the claimant's complaints, the ALJ may reject the lay witness evidence for the same reasons. *Valentine*, 574 F.3d at 694.

The ALJ did not discuss a letter from Kara Tison, Plaintiff's teacher from the adult learning program, but Plaintiff fails to show that it resulted in any harm. An ALJ's failure to discuss a lay witness evidence may be harmless where the lay witness evidence is similar to other testimony that the ALJ validly discussed. *Molina v. Astrue*, 674 F.3d 1104, 1119 (9th Cir. 2012). It may also be harmless where the lay witness evidence is contradicted by more reliable medical evidence that the ALJ credited. *Id.*

Here, both circumstances apply. In a letter prepared with the help of Plaintiff's attorney, Ms. Tison opined that Plaintiff is productive on simple routine tasks approximately 50% of the time and he had a marked limitation in his ability to interact with others. Tr. 327. These conclusions were similar to those of Plaintiff's grandmother and two aunts, who described him

as struggling with direction, requiring reminders regarding self-care and to stay on task, engaging in obsessive behavior, lacking social skills, and having poor focus and difficulty understanding protocols or rules. Tr. 317, 318. Like Ms. Tison, Plaintiff's grandmother and aunts described his interactions and behavior at school as well as at home with family members and opined that he is unable to stay on task to work at a normal job. Tr. 317, 318, 319-20. However, the ALJ concluded that those lay witness statements were of limited persuasive value based on the totality of the record, including Plaintiff's own testimony, Dr. Tongue's examination findings, and the assessments of Dr. Ju and Dr. Nicoloff, which showed that Plaintiff was not as limited as described by the lay witnesses. Tr. 25.

The ALJ's reasons for discounting those lay witness statement apply with equal force to Ms. Tison's statement. Furthermore, the ALJ relied on medical evidence, such as the opinions of Dr. Ju and Dr. Nicoloff, and Dr. Tongue's examination findings. Tr. 72-74, 86-88, 471-72. Thus, the ALJ's failure to comment on Ms. Tison's letter was harmless.

## ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this case is dismissed.

It is so ORDERED and DATED this __12__ day of May, 2021.

---

MARK D. CLARKE
United States Magistrate Judge